UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JONES,

            Petitioner,            Case Number 2:10-CV-11600
                                             Honorable Paul D. Borman

v.

WILLIE O. SMITH,

            Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner William Jones filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner pleaded no contest in the Wayne Circuit Court to armed robbery. MICH. COMP. LAWS § 750.529. The trial court sentenced him under the terms of a sentencing agreement to seven-to-twenty years in prison. Petitioner contends that: (1) he was misinformed as to the value of his plea bargain; (2) he should have been allowed to withdraw his plea after he discovered evidence of his actual innocence; (3) his appellate counsel was ineffective for ignoring obvious and significant issues; (4) the state court wrongfully denied post-conviction review when he demonstrated his innocence; and (5) his trial attorney pressured him to plead no contest. The Court finds that none of the claims have merit. The petition will therefore be denied

I.

      Petitioner was charged with armed robbery and carjacking. At the preliminary examination, the complainant testified that he was riding on his moped with a friend, when they stopped at a gas station to purchase drinks. At the gas station he saw a group of people in two cars watching them. When the complainant drove-off with his friend on the moped, one of the cars began following

them. After driving several blocks, the car cut them off, forcing them to stop. There were two men in the car. One of the men, whom complainant identified as Petitioner, got out of the car and demanded the moped. When the complainant refused, Petitioner placed his hand under his shirt and into his waistband and said that he had a gun. The complainant started the moped for Petitioner and then watched Petitioner drive off on the moped while the other man followed in the car.

The complainant and his friend later identified Petitioner and his accomplice as the men who robbed them in a pretrial lineup procedure. Ashton Wesley, the other man in Petitioner's car, pleaded guilty to charges brought against him and agreed to testify against Petitioner.

Two days before trial was set to begin, the trial court held what it called a "special pretrial." The prosecutor informed the court of the co-defendant's plea and agreement to testify against Petitioner. She also stated that the two eyewitnesses were prepared to testify at trial. The prosecutor then indicated that she and defense counsel had calculated the guidelines to call for a minimum sentence between nine and twenty years if Petitioner was convicted as charged. The prosecutor offered to drop the carjacking and habitual offender charges if Petitioner would plead guilty to armed robbery with a sentence agreement of seven-to-twenty years.

The trial court informed Petitioner that he was facing sentencing as a third-time habitual offender "which increases his criminal exposure." Plea Tr. at 5. The prosecutor corrected the court by stating that the guideline calculation already took the habitual offender charge into account. The court asked the prosecutor if she would seek a fifteen-to-twenty year minimum sentence if Petitioner were convicted after trial, and the prosecutor responded that she could ask for "twenty to life if we wanted to." Id. The court then reviewed the offer with Petitioner, stating it was "a very good offer if there's complicity on your part. It's one third under the guidelines what they're offering you to

plea." Id. at 6. The court further stated, "If you go to trial and lose, it's twenty years to life, possibly." Id. 6-7. The court explained:

> I just want any decision that you make, this your life, to be an informed decision based on all the facts because if you win a trial it's not an issue, okay?
>
> But if you lose, and they come in and they start asking 20 to 30 years and I grant their request and I'm persuaded because you have prior convictions or the seriousness of the crimes and I start hearing from the victims, I don't know what I'm going to do. I'm not going to prejudge anything, but it's a possibility and I want you to understand that.
>
> . . .
>
> So, this is a special pretrial. This your last bite of the apple so to speak, okay. Talk to your attorney about whether you're interested in offer or not, okay.

Id. at 7.

After a discussion about whether Petitioner had one or two prior felony convictions, the court gave Petitioner a "final opportunity." Petitioner stated that he had only one prior conviction, and that he was innocent of the present charge, stating "I didn't steal no moped, I didn't carjack no one, sir." Id., at 10.

The court then asked the prosecutor if she felt her case was overwhelming, and she responded that she was confident in the case. Petitioner indicated that he nevertheless wanted to proceed to trial. The court then directed defense counsel to meet privately with Petitioner one more time with his family.

After the conference with his attorney and family, Petitioner stated "I'm taking the plea," but also asked "if there is a possible way I can get back on appeal." Id., at 12. The court asked the prosecutor if her case was a "slam dunk," and she responded that she thought it was. The Petitioner persisted that he wanted to know about an appeal. The court responded by explaining that the "odds are against you" on appeal. Id. 14. It told Petitioner:

> I don't want you to plea (sic) guilty to something you don't feel you're guilty of. But if there's some complicity or some guilt on your part, you may be guilty of these offenses, or you are guilty of these offenses, you may want to consider the People's offer because it's about a third of what you may be facing, if you go to trial and lose. They seem to feel it's overwhelming evidence against you. But I don't want to tell you yes, you can plea guilty today and appeal to the court of appeals and they're likely to reverse and give you a new trial. Okay?
>
> . . .
>
> So I want you to understand that, Okay? Again, if you go to trial and you lose, if those 12 citizens say you're guilty, you come back in front of me and I hear all about your background, prior convictions, I hear the serious nature of the crime from the victims, I hear some, if they're fearful, et cetera, I consider all that in fashioning sentence.
>
> I have the ultimate authority to decide what the sentence will be. But if the People are justified in their request and I hear some pretty terrible things from people on that stand and I believe them and that jury finds you guilty, okay, I'm probably not inclined to go to the low end of the sentence, I'll tell you that right now which is nine years at the bottom end. Okay. So you may be looking at close to three times what you're exposure is, but that's not a basis to plea (sic). If you're not guilty, you don't plead guilty. But if you're guilty, then you consider taking the plea after discussing it at length with your lawyer.

Id. at 14-16.

The court also informed Petitioner that his attorney was highly respected and he should listen to her advice. It warned Petitioner that the prosecutor had convicted a lot of people, and she had "gone out of her way to tell you that I think your case is overwhelming against you. So I would use my ears this morning. . . ." Id. at 18-19.

After another short recess, the court went back on the record. Defense counsel then informed the court "for purposes of litigation and tort liability, my client offers a no contest plea." Id. at 19. The court accepted a no contest plea based on "potential civil liability." Id.

Petitioner was then placed under oath, and the plea agreement was placed on the record. Petitioner would plead guilty to armed robbery and receive a sentence of seven-to-twenty years. In exchange, the carjacking and habitual offender charges would be dropped. Petitioner denied that

4

any other promises were made to him. Petitioner acknowledged that he signed and dated the settlement acceptance form. Petitioner acknowledged his understanding of the plea bargain. He testified that he was twenty-one years old and completed the twelfth grade. The court informed Petitioner of the all the trial rights he would be waiving by entering the plea, and Petitioner indicated his understanding. Petitioner denied that any threats had been made to induce his plea. He stated that he was pleading of his own free will after consulting at length with his family and lawyer. The prosecutor used the police report to serve as the factual basis for the plea. The court found that the plea was understanding and voluntary.

A few weeks later at the sentencing hearing, Petitioner moved to withdraw his plea. He claimed that he discovered a police report that indicated that he was in custody on another charge on July 21, 2004, the date of the instant offense. The incident report forming the basis for this claim lists the date of arrest as July 21, 2004. But a Wayne County Jail report shows that Petitioner was booked on July 23, 2004.

The prosecutor stated that she had checked with the various agencies involved and concluded that the July 21st date was in error, and that Petitioner was not in custody on this other charge until July 23rd. Defense counsel agreed, stating: "And I was upstairs with [the prosecutor] watching her do all this stuff. And for the record, I myself personally went to the Westland jail at an odd hour a few weeks before the trial just to double-check, triple-check, and the officer at the front desk examined the computer and then another officer said I'm going to go in the back and look in the books. And he was not in their custody on the 21st." Sent Tr. at 6. Petitioner nevertheless expressed his desire to withdraw his plea based on his claim that he was in jail on the date of the offense. The trial court denied the motion.

Petitioner then stated that his attorney had informed him that his sentence would be seven months instead of seven years, and he claimed the his signature was forged on the plea form. Petitioner also claimed that he was crying at the time of the plea, was high on his medicine, and was not paying attention to what the court was saying during the plea hearing. The court again denied the motion, stating:

> This court provided opportunity after opportunity for this Defendant to talk to his lawyer, to his family. There's going to be no rush to judgment here. This is something that he entered into of his own volition after, I understand, the co-defendant had pled guilty and agreed to testify against him and implicated him in the crime. At that point, after those conversations, and knowing the evidence against him, he entered into and executed a pretrial settlement offer notice of acceptance form in his own writing. . . . Then the lawyer signed and dated it and we went over it on the record at great length to ensure. . . that everything that was transpiring was being done of his own volition and not under the threat of duress or coercion or any - not predicated upon any promise or threat. So I'm satisfied.

Id, at 17-18.

The court then sentenced Petitioner under the terms of the agreement to seven-to-twenty years in prison.

Following sentencing, Petitioner filed a direct appeal in the Michigan Court of Appeals, asserting the following claim:

> I. Is Mr. Jones entitled to withdraw his plea as involuntary as it was induced by an illusory bargain that he was to receive a sentence well below the guidelines range when in fact the agreed-upon sentence was within the guidelines range?

The Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." *People v. Jones*, No. 269110 (Mich. Ct. App. May 8, 2006). Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, which raised the same claim, as well as an additional claim:

> II. Defendant Jones is entitled to withdraw his nolo contendere plea on the basis of

6

newly discovered evidence, which constitutes his actual innocence to the crime charged.

The Michigan Supreme Court denied the application in a standard order. *People v. Jones*, No. 137276 (Mich. Sup. Ct. September 26, 2006).

Petitioner returned to the trial court and filed a motion for relief from judgment, which contained the following claims:

> I. Defendant Jones is Entitled to Withdraw his Nolo Contendere Plea on The Basis of Newly Discovered Evidence, Which Constitutes His Actual Innocence to The Crime Charged and Defendant was Denied Effective assistance of counsel.
>
> II. Was Mr. Jones denied the effective assistance of appellate counsel as guaranteed by the United States and Michigan Constitutions for not raising issues that were obvious and significant.
>
> III. Was Mr. Jones also entitled to relief from judgment where the irregularity was so offensive to the maintenance of a sound judicial system.
> IV. Defendant Jones should be allowed to withdraw his guilty plea because he had pled guilty under pressure from an overzealous defense counsel and there was no detrimental reliance by the prosecution.

The trial court denied the motion in an opinion and order dated October 17, 2007. The court found that Petitioner's first and fourth claims were barred from review by Michigan Court Rule 6.508(D)(2), because they had been raised in his direct appeal. The court found that Petitioner's remaining claims "fail to meet the heavy burden under Michigan Court Rule 6.508(D)(3)(a) good cause and actual prejudice." Opinion, at 6.

Petitioner appealed this decision, but his application for leave to appeal was denied by the Michigan Court of Appeals "because defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Jones*, No. 286543 (Mich. Ct. App. February 25, 2009). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but that court also denied relief under Rule 6.508(D). *People v. Jones*, No. No. 138632 (Mich. Sup. Ct.

7

September 28, 2009).

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v.*

8

*Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court]

is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

### III.

### A.

Petitioner's first claim asserts that his plea was invalid because he was misinformed about the value of his sentencing agreement. He claims that he was told that his sentence would be the sentencing guideline range if he had been convicted as charged, but in fact it was within the range. In his related fifth claim, Petitioner asserts that his plea was involuntary because he was pressured into pleading by his defense attorney. Neither claim has merit.

To satisfy the dictates of due process, guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The record should reflect a full understanding of the direct consequences so that the plea represents a voluntary and intelligent choice among alternatives. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993); see also 28 U.S.C. § 2254(e)(1). When a defendant brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding. *Garcia*, 991 F.2d at 326. However, when the transcript is inadequate

to demonstrate that a plea was voluntary and intelligent, the presumption of correctness no longer applies. *Id.* at 327.

Petitioner first asserts that his plea was invalid because the value of the bargain was misrepresented at the plea hearing. The record shows that the trial court repeatedly informed Petitioner on the date of the plea that if he was convicted after trial that he could face twenty years to life, whereas the plea agreement called for a sentence that was about a third as long. The court also represented that the sentence agreement of seven-to-twenty years was two years below the bottom of the recommended guideline range.

Petitioner asserts that if he had been convicted as charged, his guideline range would have called for a minimum sentence of 81-to-202 months. Because the sentencing agreement ultimately fell within what the recommended guideline range would have been for conviction of all the offenses. Petitioner concludes the representations about the value of the sentencing agreement were false.

Petitioner's argument hinges on his own calculation of how the sentencing guidelines would have been calculated if he had been convicted as charged after a trial. However, the prosecutor disputed Petitioner's appellate counsel's calculation of an 81-to-202 month guideline range. Under the calculation made by the prosecutor, the guideline range would have been 9-to-30 years, with the possibility that the sentences would have been consecutive. The competing calculations were presented to the trial court during Petitioner's motion to withdraw his plea, which the trial court denied.

Precisely because Petitioner pled, the sentencing guidelines were never calculated by the trial court for conviction on all of the charges. The particular dispute over the guideline range concerns

11

an offense variable dealing with victim vulnerability. Petitioner argues that the fifteen-year-old victims were not vulnerable youths, while the prosecutor argued that they were. The Court need not weigh in on this dispute. It is sufficient to say that the by accepting the plea bargain, Petitioner avoided the possibility that the sentencing court would have accepted the prosecutor's scoring. The calculation made by the prosecutor was not implausible. Therefore, Petitioner has not demonstrated that the value of the sentencing agreement was misrepresented at the plea hearing so as to render his plea involuntary.

Petitioner's fifth claim asserts that he was coerced by the conduct of his trial attorney to accept the plea bargain. Indeed, at various points during the plea hearing it appears that both attorneys and the trial judge worked together to convince Petitioner to accept the plea bargain.

At points prior to the plea proceeding, Petitioner stated that he wished to go to trial. In response, his attorney asked for more time to discuss the matter with Petitioner and his family. Defense counsel also agreed to the prosecutor's prediction of the sentencing guidelines. She agreed that the record showed that Petitioner had two prior felony convictions instead of one as he claimed, and when Petitioner attempted to withdraw his plea prior to sentencing on the ground that he was in custody at the time of the offense, after examining the relevant data, she agreed with the prosecutor that he was not.

The trial court suggested that Petitioner should strongly consider accepting the plea bargain. It referred to the hearing as a "special" pretrial. It emphasized several times that Petitioner faced a much longer sentence if he was convicted after a trial. It elicited from the prosecutor that she thought the case was a "slam-dunk." When Petitioner indicated his desire to stand trial, the trial court provided Petitioner with additional "last" opportunities to consult with his attorney and family.

Accordingly, there are facts of record tending to indicate that Petitioner was ultimately persuaded by his attorney, the trial court, and his family to abandon his desire to contest the charges and instead accept the plea bargain. The question here is whether that persuasion was so coercive so as to overcome Petitioner's will and render the plea involuntary. Part of the answer to this question lies in the facts explained to Petitioner that set forth the specific benefits received by pleading guilty in a victim-eyewitness driven case.

The Court finds that Petitioner's plea was voluntary despite the efforts aimed at convincing him to relinquish his desire to stand trial.

There is no question that defense counsel strongly encouraged Petitioner to take the plea bargain and avoid trial. She did not dispute the prosecutor and trial court's characterization of the strength of the evidence against him. And, after checking the facts of her client's claim, she did not press Petitioner's proffered defense that he was in custody at the time of the offense. This advice was sound. The prosecutor had two eyewitnesses. Petitioner's co-defendant had turned state's evidence. And the only basis for Petitioner's defense appeared to be a typo in a police report. Petitioner's counsel's efforts to persuade him to accept the plea bargain did not approach a constitutionally suspect level of coercion. *See, e.g., United States v. Mitchell*, 633 F.3d 997, 1002 (10th Cir. 2011) (Defendant's claim that defense counsel had put impermissible pressure on him to plead guilty was rejected by the Court of Appeals because "[i]t is apparent counsel believed the government's offer was a good one, and like any competent lawyer assessing the pros and cons for her client, she gave [defendant] her most candid advice. The fact she used colorful language—'you would be a fool not to take this plea offer!!'—does not approach a constitutionally suspect level of coercion.")

Nor did the conduct of the trial court render the plea involuntary. The dangers of judicial participation in plea bargaining include its coercive potential and the possibility that a judge's neutrality will be compromised. *United States v. Barrett*, 982 F.2d 193, 195 (6th Cir. 1992). However, participation in state court plea negotiations does not necessarily amount to a constitutional violation which justifies overturning a guilty plea. *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980); *Desmyther v. Bouchard*, 108 F. App'x 364, 366 (6th Cir. 2004) (quoting *Frank v. Blackburn*, 646 F.2d 873, 880 (5th Cir. 1980)). "Although federal judges are prohibited from participating in plea bargaining, see FED. R. CRIM. P. 11(c)(1), this blanket prohibition does not apply to state judges." *McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004). "'[A] federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process.'" *Desmyther*, 108 F. App'x at 366 (quoting *Frank*, 646 F.2d at 882). "'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review." *Id.* at 366-67 (quoting *Frank*, 646 F.2d at 882).

A defendant's decision to enter into an agreement that will result in his incarceration is only made because he or she views it as the lesser of two evils. Anyone making such a decision, on some level, can say that the choice was not voluntary but was forced upon them by the prospect of receiving of harsher punishment if convicted after a trial. This type of pressure, inherent in any plea bargain, does not render a plea constitutionally involuntary. The statements made by the trial court here during the plea colloquy merely gave voice to these dynamics. Nothing the trial court stated during the plea colloquy was false. The court laid Petitioner's situation before him in plain terms and let him decide on his course of action. The trial court did not make any improper threats; he

merely outlined the legal consequences that Petitioner's options might entail. That is, the judge permitted Petitioner to intelligently choose between pleading no contest or going to trial, and ensured that he had a full understanding of the consequences of both options. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). Nothing in the record shows that the judge intended to retaliate against Petitioner if he went to trial. Thus, the judge's remarks on sentencing cannot be deemed to be threats, and Petitioner's plea was valid under the totality of the circumstances. *See Brady*, 397 U.S. at 749-750.

It should also be noted that the plea bargain resulted in a substantial benefit for Petitioner. It appears that the case against him was quite strong. The victim and his friend both were able to identify Petitioner at a line-up, and Petitioner's accomplice had turned state's evidence. Petitioner's prospects for acquittal after a trial, therefore, did not appear to be good. The agreement resulted in the dismissal of the carjacking and habitual offender charges. As noted by the trial court, had Petitioner been convicted as charged after a trial, he faced the prospect of receiving consecutive sentences with a guideline range that might have called for each minimum sentence to be anywhere between nine-to-thirty years. Accordingly, Petitioner received a substantial benefit from the seven-to-twenty year sentencing agreement.

Petitioner's first and fifth claims are therefore without merit.

B.

Petitioner's second claim asserts that he should have been allowed to withdraw his no contest plea because of evidence showing that he was in custody on the date of the crime. Petitioner's related fourth claim asserts that the state court should have granted his motion for relief from judgment because this evidence pointed to irregularities in the trial court proceedings that were

offensive to the maintenance of a sound judicial system under Michigan Court Rule 6.509(D)(3)(b)(iii).

First, a claim that a trial court erred in not providing a defendant an opportunity to withdraw his plea is not cognizable on habeas review because it is a state-law claim. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, 76 F.3d 378 [published in full-text format at 1996 U.S. App. LEXIS 3479] at *2 (6th Cir. 1996) (Table) (citing *Brady*, 397 U.S. at 749)); *see also Johnson v. Prelesnik*, No. 2:08-cv-13741, 2010 U.S. Dist. LEXIS 70872, 2010 WL 2804937, at *7-8 (E.D. Mich. June 23, 2010) (Rosen, J.) ("[a] criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea") (citing *Chene*, 76 F.3d, 1996 U.S. App. LEXIS 3479 [WL] at *2).

Likewise a claim that a state court misapplied state post-conviction review procedures is not cognizable. There is no federal constitutional requirement that states provide a means of post-conviction review of state convictions. Therefore, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. *Williams-Bey v. Trickey*, 894 F. 2d 314, 317 (8th Cir. 1990); *See also Kirby v. Dutton*, 794 F. 2d 245, 247-248 (6th Cir. 1986)(defendant's claims that he was denied the effective assistance of counsel, due process, and equal protection in state's post-conviction proceedings were unrelated to his detention and could not be brought in a federal habeas corpus petition). Even if the state court improperly refused to review the merits of Petitioner's claims under the terms of Michigan Court Rule 6.508(D)(3)(b)(iii),

concerning "irregularities [] so offensive to the maintenance of a sound judicial process," Petitioner's federal constitutional rights were not implicated because he had no constitutional right to post-conviction review as all.

Second, Petitioner's claim that his new evidence shows him to be innocent is dubious. A Westland Police Department Incident Report dated July 23, 2004, indicates the date of occurrence of the prior offense as Friday, July 21, 2004, at 2050 hours. The body of the report also lists the arrest date as July 21, 2004. The narrative of the report states that Petitioner was pulled over in his vehicle for a broken tail light and was then arrested on the outstanding warrant for the unauthorized use of a motor vehicle. A Wayne County Jail record indicates that Petitioner was booked-in on July 23, 2004, at 2147 hours. Petitioner interprets these records to mean that he was arrested on the same day the prior crime occurred, July 21, 2004, and was held at the Westland Police Department lock-up for two days until he was transferred to the Wayne County Jail. The prosecutor investigated this possibility, and was informed by the Westland Police Department that Petitioner was never held at their jail. Defense Counsel stated at the sentencing hearing, when Petitioner again raised the allegation, that she personally visited the Westland Police Department and had an officer check their records, who confirmed that Petitioner was never held there. Moreover, as Respondent points-out, July 21, 2004, fell on a Wednesday, lending credence to the theory that the officer preparing the report on "Friday" July 21, 2004, put down the wrong date. In short, the trial court did not abuse its discretion in denying Petitioner's motion to withdraw his plea on the basis of this evidence.

Accordingly, Petitioner's second and fourth claims do not state a basis for granting habeas relief.

17

C.

Petitioner's third claim asserts that he was denied the effective assistance of appellate counsel because counsel did not raise obvious and significant issues during his direct appeal. Petitioner does not seek a new direct appeal. Rather, this claim was raised in the state courts to demonstrate "good cause" and "actual prejudice" as required by Michigan Court Rule 6.508(D)(3) to demonstrate entitlement to a merits review of his substantive claims. Because this Court reached the merits of all of Petitioner's substantive claims, review of his ineffective assistance of appellate counsel claim is moot. *See Thompkins v.. Ludwig*, 2:08-CV-14809, 2011 WL 1598573 (E.D. Mich. Apr. 28, 2011).

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a),

28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.

Paul. D. Borman
United States District Judge

Dated: 9-17-12